**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| VINCENT C. McGEE, | : |
| Petitioner | : CIVIL ACTION NO. 3:18-0904 |
| v. | : (JUDGE MANNION) |
| MARK CAPOZZA, Superintendent | : |
| Respondent | : |

**MEMORANDUM**

Petitioner, Vincent McGee, an inmate confined in the Fayette State Correctional Institution, LaBelle, Pennsylvania, filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. §2254. He attacks a 2002 conviction imposed by the Court of Common Pleas for Centre County, Pennsylvania. (Doc. 1). Following careful consideration of the parties' submissions, and for the reasons discussed below, the Court will dismiss the petition as untimely. See 28 U.S.C. §2244(d).

**I.    Background**

A portion of the factual and procedural background of this case has been extracted from the Pennsylvania Superior Court's March 31, 2004 Memorandum Opinion affirming McGee's conviction and sentence. (See

(Doc. 15 at 6).

> The testimony at trial established that on November 8, 2001, Amy McGee was working as a employee at Verizon Wireless when she called home to speak to her two-year-old son. Amy realized that Appellant, who had a history of alcohol abuse and was home with his and Amy's two children, was intoxicated. Amy went home and made arrangements for her parents to baby-sit the children. When Amy returned to work that afternoon, she told one of her co-workers that it was over between her and Appellant, and that she wasn't going back to him. Appellant called the store several times that day to speak with Amy, and eventually appeared at the store in person and followed Amy around. Subsequently, Appellant left the store with the truck that Amy had driven to work. At the end of the day, Amy's parents picked her up and Amy, her parents, and the children went to a restaurant for dinner. Appellant arrived at the restaurant, at which time Amy told him he had until the next day to move out of the house. Appellant stated that he was not going to leave without his sons; he then went home.
>
> After dinner, Amy's parents drove her to her house so that she could pick up some clothing for the children. Amy went into the house, and approximately ten minutes later, Appellant came to the door and told Amy's parents to come inside because he had just shot Amy. When the police arrived at the residence, they saw Appellant in the living room leaning over Amy, who had a single gunshot wound to the head. Appellant told the officers that he had been seated in a recliner chair, with Amy standing nearby, when the gun the Appellant had tucked into his waistband became uncomfortable. Appellant claimed that he decided to move the gun from his left side to his right, and that as he did so, the gun accidentally discharged and the bullet struck his wife. The forensic evidence indicated, however, that the bullet traveled from the top of Amy's skull downward.
>
> That same day, Appellant was arrested and charged with first-degree murder, third-degree murder, voluntary manslaughter and

involuntary manslaughter. Prior to trial, Appellant filed an omnibus pretrial motion wherein he requested, *inter alia*, an amendment of the bill of information and suppression of his post-arrest statements to police. The motion was denied, in relevant part, by the trial court on May 20, 2002. At trial, the Commonwealth proceeded on the murder charges alone, and on September 19, 2002, Appellant was convicted of first-degree murder. He was immediately sentenced to life imprisonment. On September 27, 2002, Appellant filed timely post-sentence motions, which were denied by the trial court on February 10, 2003. This timely appeal followed.

On appeal, Appellant presents the following issues for our review:

1. Did the Trial Court commit reversible error in denying appellant's Motion in Limine, in allowing numerous co-workers of Amy McGee to testify to hearsay statements made by her to them, and in denying appellant's Motion for Mistrial raised during the testimony of co-worker Timothy Guffey when he testified that Amy McGee had told him that appellant had punched her in the nose several months prior to her shooting death?

2. Did the Trial Court commit reversible error in denying appellant's Omnibus Pre-Trial Motions in the nature of Motions to Suppress Statements?

3. Did the Trial Court commit reversible error in denying appellant's Motion in Limine and Supplemental Motion in Limine and allowing Trooper Brian Hoover to testify as to the Bedford County incident on October 17, 1999, resulting in appellant being charged with Recklessly Endangering Another Person, that did not result in a conviction?

4. Did the Trial Court commit reversible error in denying appellant's Motion to Amend Bill of Information to include a count of Voluntary Manslaughter, an offense on which appellant was initially charged and bound over to stand Trial, and in refusing to charge the Jury on Voluntary Manslaughter and to include it on

3

the Verdict Slip?

5. Did the Trial Court commit reversible error in refusing to recharge the Jury on the defense of Voluntary Intoxication when it re-instructed the Jury on the elements of First Degree Murder and Third Degree Murder?

(See Doc. 15 at 6, Memorandum Opinion). By Memorandum Opinion dated March 31, 2004, the Pennsylvania Superior Court affirmed Petitioner's first-degree murder conviction. Id. By Order dated July 21, 2004, the Pennsylvania State Supreme Court denied McGee's petition for allowance of appeal. (Doc. 15 at 22, Order).

On July 18, 2005, Petitioner, acting *pro se*, filed a petition under Pennsylvania's Post Conviction Relief Act, 42 Pa. C.S.A. §§ 9541, et seq. ("PCRA"). (Doc. 15 at 41, PCRA petition). He raised eighteen (18) claims of ineffective assistance of counsel and one (1) claim of prosecutorial misconduct. Id. McGee's PCRA petition was amended on December 7, 2007. (Doc. 15 at 39, Amended PCRA petition). On January 30, 2007, counsel was appointed to represent McGee in his PCRA proceedings. Commonwealth v. McGee, Docket No. CP-14-CR-0001842-2001.

A PCRA hearing was held on March 12, 2009, with Petitioner present. Id.

On May 28, 2009, the Commonwealth filed a motion to reopen the

4

record. Id.

By Orders dated August 5, 2009, and November 4, 2009, the PCRA court scheduled video conferences on McGee's PCRA petition. Id.

On July 8, 2010 Petitioner filed a *pro se* Petition for Redress of Grievance with the trial court. Id On August 11, 2010, Petitioner filed a Notice of Fault, and on August 20, 2011, Petitioner filed a Notice of Default and Res Judicata. Id. By Order dated August 23, 2010, the trial court dismissed, with prejudice, the Petition for Redress of Grievance as being unintelligible and dismissed Petitioner's two notices of Default. Id.

On September 23, 2010, Petitioner filed another *pro se* Petition for Redress of Grievance, Id., which was denied without a hearing by Order dated October 6, 2010. Id. On October 22, 2010, Petitioner filed an appeal from the Court's October 6, 2010 Order, to the Pennsylvania Superior Court. Id. By Order dated July 20, 2011, the Superior Court quashed McGee's appeal. Id.

On July 20, 2011, McGee filed a motion for new counsel. Id. On November 22, 2011, McGee's PCRA counsel filed a motion to withdraw as counsel. Id. By Order dated November 30, 2011, the PCRA Court scheduled a hearing. Id. On December 15, 2011, the PCRA court granted counsel's

motion to withdraw. Id.

On December 19, 2011, the Commonwealth filed a brief in opposition to Petitioner's Amended PCRA petition, and on December 29, 2011, Petitioner's PCRA petition was denied. (Doc. 15 at 63, Opinion and Order).

On September 2, 2011, McGee filed a state petition for writ of habeas corpus in the Court of Common Pleas for Centre County. (Doc. 15 at 56).

On December 12, 2011, Petitioner filed a federal writ of habeas corpus in the Middle District. McGee v. Coleman, Civil No. 3:11-cv-2296 (M.D. Pa., Nealon J.). On January 15, 2012, Petitioner returned this Court's Notice of Election, indicating that he wished to withdraw his petition so that he may file one, all-inclusive petition within the one-year limit for filing such a petition. Id. Specifically, Petitioner stated that he "had requested transcripts from the lower court hearing conducted on 12-15-11, or in the alternative a District Court ruling striking that hearing from the record due to a lack of jurisdiction" and that he was "waiting to receive a response." Id. By Memorandum and Order dated January 27, 2012, Petitioner's habeas corpus action was deemed withdrawn without prejudice. Id.

On January 24, 2011, McGee filed an application for leave to file original process in the Pennsylvania Supreme Court. (Doc. 15 at 25). By Order dated

May 30, 2012, the Pennsylvania Supreme Court granted Petitioner's Application for leave to file original process and denied the petition for writ of habeas corpus. (Doc. 15 at 73, Order). On August 7, 2012, the Pennsylvania Supreme Court denied Petitioner's application for reconsideration. (Doc. 15 at 61, Order).

On August 13, 2012, McGee filed a second federal habeas corpus action in this Court. McGee v. Coleman, Civil No. 3:12-cv-1581 (M.D. Pa., Nealon J.). He raised the following grounds for relief:

1. Inordinate delay of 6 years 11 months to answer the still pending PCRA petition.

2. Actual Innocence in that "the 'direct evidence' from the crime scene investigation proves how impossible it would have been for the Petitioner to have had any involvement in the crime itself."

3. Trial court failed to address Petitioner's habeas corpus petition or any issues contained therein.

4. Petition for Redress of Grievance, challenging court's jurisdiction, denied.

5. Petition for Redress of Grievance for the Commonwealth "to produce and provide specific evidence showing proof of claim/proof of authority concerning case number CP-14-CR-1842-2001" denied.

6. Ineffective assistance of pre-trial, trial, post trial, direct appeals counsel, and PCRA counsel.

Id. By Memorandum and Order dated July 14, 2015, the Court denied the petition for writ of habeas corpus, finding, *inter alia*, no inordinate delay, as Petitioner's PCRA petition was denied on December 29, 2011 and no appeal was taken. Id. As such, the Court found that Petitioner had failed to exhaust state court remedies with respect to the claims raised in his petition. Id.

On March 11, 2016, Petitioner filed a third federal petition for writ of habeas corpus. See McGee v. Wetzel, Civil No. 3:16-cv-0439 (M.D. Pa. Nealon, J.). On June 27, 2016, Petitioner returned this Court's Notice of Election, indicating that he chooses to withdraw the petition so that he may file one, all-inclusive petition under 28 U.S.C. §2254 within the one-year limit for filing such a petition.

On April 18, 2018, Petitioner filed the above captioned petition for writ of habeas corpus in the United States Court for the Western District of Pennsylvania. (Doc. 1, petition). By Memorandum and Order dated April 25, 2018, the Western District transferred the action to the Middle District, where it was received and filed on April 27, 2018. (Doc. 3). Upon consideration of Petitioner's failure to return this Court's Notice of Election, the Court issued a show cause order, requiring Respondent to file a response to the petition, as filed. (Doc. 9, Order).

On February 4, 2019, Respondent filed a motion to dismiss the petition for writ of habeas corpus as untimely. (Doc. 15). A brief in opposition having been filed on March 1, 2019, (Doc. 19), the petition is ripe for disposition.

## II.  Discussion

A state prisoner requesting habeas corpus relief pursuant to 28 U.S.C. §2254 must adhere to a statute of limitations that provides, in relevant part, as follows:

> (d)(1) A one-year period of limitations shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of - (A) the date on which the judgment became final by the conclusion of direct review or the expiration for seeking such review . . .
>
> (d)(2) The time during which a properly filed application for State post conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. §2244(d)(1)-(2)(emphasis added); see generally, Jones v. Morton, 195 F.3d. 153, 157 (3d Cir. 1999). Thus, under the plain terms of §2244(d)(1)(A), the period of time for filing a habeas corpus petition begins to run when direct review processes are concluded. See Harris v. Hutchinson, 209 F.3d 325, 327 (4th Cir. 2000). ("[T]he AEDPA provides that upon

conclusion of direct review of a judgment of conviction, the one year period within which to file a federal habeas corpus petition commences, but the running of the period is suspended for the period when state post-conviction proceedings are pending in any state court."); Fields v. Johnson, 159 F.3d 914, 916 (5th Cir. 1998)(*per curiam*); Hoggro v. Boone, 150 F.3d 1223, 1226 (10th Cir. 1998). It is not the conclusion of state post-conviction collateral review processes that starts the running of the limitations period. See Bunnell v. Yukins, No. 00-CV-73313, 2001 WL 278259, *2 (E.D. Mich. Feb 14, 2001)("Contrary to Petitioner's assertion, the limitations period did not begin to run anew after the completion of his post-conviction proceedings.").

As indicated above, section 2244(d)(2) operates to exclude only the time within which a "properly filed application" for post conviction relief is pending in state court. Thus, when a petition or appeal has concluded and is no longer pending, the one (1) year statute of limitations starts to run and the time is counted. A "properly filed application" for post conviction relief under §2244(d)(2) is one submitted according to the state's procedural requirements, such as rules governing time and place of filing. Lovasz v. Vaughn, 134 F.3d 146, 148 (3d Cir. 1998). The Third Circuit Court of Appeals has defined "pending" as the time during which a petitioner may seek

discretionary state court review, whether or not such review is sought. Swartz v. Meyers, 204 F.3d 417 (3d Cir. 2000). "Pending," however, does not include the period during which a state prisoner may file a petition for writ of certiorari in the United States Supreme Court from the denial of his state post-conviction petition. Stokes v. District Attorney of the County of Philadelphia, No. 99-1493, 2001 WL 387516, at *2 (3d Cir., April 17, 2001). Likewise, the statute of limitations is not tolled under §2244(d)(2) for the time during which a habeas petition is pending in federal court. Jones, 195 F.3d at 158.

The AEDPA statute of limitations also may be subject to equitable tolling. The Third Circuit has held that the federal habeas statute of limitations is subject to equitable tolling only in extraordinary circumstances. See Merritt v. Blaine, 326 F.3d 157, 161 (3d Cir. 2003). In Merritt, the Court of Appeals set forth two general requirements for equitable tolling: "(1) that the petitioner has in some extraordinary way been prevented from asserting his or her rights; and (2) that the petitioner has shown that he or she exercised reasonable diligence in investigating and bringing the claim." Id. (internal citations and quotations omitted).

### A.  Statutory Tolling

The Pennsylvania Supreme Court denied allocatur on Petitioner's direct

appeal on July 21, 2004. Thus, his conviction became final on October 19, 2004, after 90-days had passed in which he could have petitioned the United States Supreme Court for a writ of certiorari. See Almazan v. Commonwealth of PA, 80 F.Supp.3d 602, 605 (E.D.Pa. 2015) (citing Kapral v. United States, 166 F.3d 565 (3d Cir. 1999)). The clock for filing a federal habeas petition began running on October 19, 2004, and petitioner then had one year, or until October 19, 2005, to file a timely habeas corpus petition. Burns v. Morton, 134 F.3d 109, 111 (3d Cir. 1998).

Pursuant to 28 U.S.C. §2244(d)(2), when McGee filed his PCRA petition on July 18, 2005, the AEDPA's filing period was statutorily tolled with approximately 93 days of the one (1) year filing period remaining. See Harris, 209 F.3d at 328. Petitioner's PCRA petition was pending until December 29, 2011, when the PCRA Court denied the petition. Because Petitioner did not file an appeal with the Pennsylvania Superior Court, his conviction became final on January 28, 2012, or thirty (30) days after the time for filing an appeal to the Pennsylvania Superior Court expired. See 28 U.S.C. §2244(d)(1)(A); Pa. R. App. P. 903. Accordingly, the remaining 93 days of the one-year limit for Petitioner to timely file a federal petition for writ of habeas corpus began

on January 28, 2012[1] and expired on April 30, 2012. The instant petition was not filed until April 18, 2018, almost six years after the limitations period expired. Thus, the petition for habeas corpus relief is barred by the statute of limitations, and should be dismissed as untimely, unless the statute of limitations is subject to statutory or equitable tolling.

### B. Equitable Tolling

Equitable tolling of the limitations period is to be used sparingly and only in "extraordinary" and "rare" circumstances. See Satterfield v. Johnson, 434 F.3d 185, 195 (3d Cir. 2006); LaCava v. Kyler, 398 F.3d 271, 274-75 (3d Cir. 2005). It is only in situations "when the principle of equity would make the rigid application of a limitation period unfair" that the doctrine of equitable tolling is to be applied. See Merritt v. Blaine, 326 F.3d 157, 168 (3d Cir. 2003). Generally, a litigant seeking equitable tolling must establish the following two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way. Pace v. Diguglielmo, 544 U.S. 408, 418 (2005).

---

[1]The Respondent uses August 7, 2012 as the date to trigger the one year period within which to filed a federal habeas corpus petition. (Doc. 16 at 6). However, even if this Court were to grant Petitioner until, August 7, 2013, within which to file a habeas petition, the instant petition still remains untimely by almost five years.

With respect to the diligent pursuit of rights, a petitioner must demonstrate that he or she exercised reasonable diligence in investigating and bringing the claims. See Robinson v. Johnson, 313 F.3d 128, 142 (3d Cir. 2002). Mere excusable neglect is not sufficient. See LaCava, 398 F.3d at 276. Moreover, "the party seeking equitable tolling must have acted with reasonable diligence throughout the period he seeks to toll." Warren v. Garvin, 219 F.3d 111, 113 (2d Cir. 2000) (quoting Smith v. McGinnis, 208 F.3d 13, 17 (2d Cir. 2000)).

Extraordinary circumstances have been found where (1) the respondent has actively misled the petitioner, (2) the petitioner has in some extraordinary way been prevented from asserting his rights, (3) the petitioner has timely asserted his rights mistakenly in the wrong forum, see Jones, 195 F.3d at 159, or (4) the court has misled a party regarding the steps that the party needs to take to preserve a claim. See Brinson v. Vaughn, 398 F.3d 225, 230 (3d Cir. 2005).

The Supreme Court has recognized that an attorney's egregious error or neglect may constitute an extraordinary circumstance for equitable tolling purposes. See Holland v. Florida, 560 U.S. 631, 635-54, 130 S.Ct. 2549, 177 L.Ed.2d 130 (2010). An "egregious error" includes instances where an

14

attorney fails to file an appeal after an explicit request from the petitioner, "affirmatively deceives the petitioner about filing a direct appeal," or "persistently neglects the petitioner's case." Schlueter v. Varner, 384 F.3d 69, 7677 (3d Cir. 2004). Applying this exacting standard, the Third Circuit has repeatedly found that in non-capital cases, attorney error does not constitute the "extraordinary circumstances" necessary for equitable tolling. See, e.g., Schlueter, 384 F.3d at 76 (holding that "[g]enerally ... attorney error is not a sufficient basis for equitable tolling of the AEDPA's one-year period of limitation."); Johnson v. Hendricks, 314 F.3d 159, 163 (3d Cir. 2002) (holding that a petitioner's receipt of erroneous advice from counsel regarding the deadline for filing a federal habeas corpus petition did not warrant equitable tolling); Fahy v. Horn, 240 F.3d 239, 244 (3d Cir. 2001) (finding that "[i]n non-capital cases, attorney error, miscalculation, inadequate research, or other mistakes have not been found to rise to the 'extraordinary' circumstances required for equitable tolling."). Generally, an attorney's delinquency is chargeable to a client and is not a basis for equitable tolling. See Seitzinger v. Reading Hosp. and Med. Ctr., 165 F.3d 236, 237 (3d Cir. 1999) (considering the timeliness of a complaint in a Title VII case).

McGee contends that he is entitled to equitable tolling of the statute of

limitations due to the ineffective assistance of his court-appointed PCRA counsel. (Doc. 19). Specifically, McGee claims that his PCRA counsel failed to notify inform him when the PCRA court issued a Notice of Intent to dismiss his PCRA petition, and then failed to notify him when his PCRA petition had been dismissed on December 29, 2011. (Doc. 19 at 6). McGee further asserts that he exercised due diligence under the circumstances in pursuing his claims.

While the Supreme Court has recognized that an attorney's egregious error or neglect may constitute an extraordinary circumstance for equitable tolling purposes, see Holland, 560 U.S. at 635-54, this would be dependent on counsel's active representation of the Petitioner at the time of the alleged extraordinary circumstance. The record before this Court reflects that PCRA counsel's motion to withdraw was granted on December 15, 2011. Thus, Petitioner was proceeding *pro se*[2] on December 29, 2011, when the PCRA court issued its opinion dismissing Petitioner's PCRA petition. Additionally, the record reflects that on January 5, 2011 an Order releasing PCRA counsel was mailed to McGee in response to Petitioner's January 3, 2012 correspondence.

---

[2]The record reflects that McGee did not request appointment of counsel again until August 19, 2016. See Commonwealth v. McGee, Docket No. CP-14-CR-0001842-2001.

16

See Commonwealth v. McGee, Docket No. CP-14-CR-0001842-2001. Consequently, the Court finds that Petitioner was not represented by counsel at the time his PCRA petition was denied and as such, Petitioner is not entitled to equitable tolling based on counsel's ineffectiveness. Moreover, it appears that Petitioner was on notice that counsel was dismissed from representation long before the federal statute of limitations expired on April 30, 2012.

Finally, McGee has failed to show that he was reasonably pursuing his rights diligently in attempting to file an appeal after the extraordinary circumstances began. Petitioner claims that he was first put on notice of the PCRA Court's December 29, 2011 dismissal of his PCRA petition on July 14, 2015.³ (Doc. 19 at 8). Yet, he never filed a petition for allowance of appeal

---

³Petitioner claims that he first learned of the PCRA court's December 29, 2011 dismissal of his PCRA petition on July 14, 2015, at the conclusion of McGee v. Coleman, Civil No. 3:12-cv-1581. The Court questions this date as the December 12, 2012 response filed in that action by respondents not only stated that McGee's PCRA petition had been denied on December 29, 2011, but a copy of the PCRA court opinion was attached as an exhibit to the response. Thus, the Court finds that Petitioner was on notice of the denial of his PCRA petition as early as December 2, 2012. This conclusion is supported by Petitioner's December 18, 2012 motion to expand the record, filed in McGee, Civil No. 3:12-cv-1581, in which Petitioner requests a copy of the "transcript of an alleged hearing that was conducted on 12/29/11 to allegedly deny Petitioner's PCRA." Id.

from the PCRA dismissal, *nunc pro tunc,* with the Pennsylvania Superior Court. Aside from Petitioner's February 1, 2012 motion for leave to file original process in the Pennsylvania Supreme Court, Petitioner's first attempt to address his PCRA petition was on August 19, 2016, when he filed a motion for appointment of counsel and PCRA motion *nunc pro tunc*, over one year after he claims he became aware of the denial of his PCRA petition. Furthermore, McGee did not file the instant habeas petition with this Court until April 27, 2018. As such, the Court finds that McGee has not alleged facts that demonstrate reasonable diligence in bringing his claims in a habeas petition. Thus, since McGee "has not shown enough to satisfy the reasonable diligence prong of the equitable tolling test, his claims are not subject to equitable tolling." Almazan v. Commonwealth of Pa., 80 F.Supp.3d 602, 609 (E.D. Pa. 2015); see also Sistrunk v. Rozum, 674 F.3d 181, 190 (3d Cir. 2012). Accordingly, the petition is time-barred and will be dismissed.

### III. **Certificate of Appealability**.

When a district court denies a habeas petition on procedural grounds without reaching the underlying constitutional claims, a certificate of appealability should issue only if (1) the petition states a valid claim for the

18

denial of a constitutional right, and (2) reasonable jurists would find it debatable whether the district court was correct in its procedural ruling. Slack v. McDaniel, 529 U.S. 473, 484 (2000). In this case, reasonable jurists could not disagree that the instant petition is time-barred. It is statutorily barred, and neither statutory nor equitable tolling apply to the petition.

## IV. Conclusion

In light of the foregoing, the petition for writ of habeas corpus will be **DISMISSED**, and the case will be **CLOSED**. An appropriate order will follow.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Dated: August 14, 2019**
18-0904-01